Burke, J. (dissenting in part).
Despite ample evidence of Posner’s and Snook’s knowing participation with larcenous knowledge and intent in criminally deceiving the State into paying for highway excavation work which had not been performed, these defendants are adjudged to be, as a matter of law, immune from prosecution on the grand larceny indictments returned by the Grand Jury. Such a holding is based on a conclusion that the indictments are founded on evidence which as a matter of law is insufficient to warrant convictions. There is, it is asserted, no evidence of intent on their part, no evidence of any taking by them or any taking by anybody.
This is a new concept in the law of larceny. One of the common forms of larceny is a situation wherein a trusted employee *339 charges the employer for services which the employee knows he did not render, or bills the employer for expenses which the employee knows he has not incurred. The false document so used to deprive the employer of property is called, in common parlance, “ a swindle sheet.” Another age-old form of larceny is the circumstance in which a trusted employee certifies that merchandise was delivered to or work was performed for the employer by third parties when the employee knows that such is not the case. Here according to the evidence in this record, the defendants Snook and Posner collaborated in carrying out both these ancient forms of larceny on an extravagant scale. It is undisputed that Snook arranged for the acquisition and use by Briggs, Blitman and Posner of supposed excavation notes from the Yonkers Contracting Co. for their use in the preparation of fake work progress statements. These were certified to the State as statements of the amount of excavation done by Yonkers, which work Briggs, Blitman and Posner were supposed to inspect and verify under a fee agreement that set their compensation at a certain percentage of the amount of work certified as completed. There is a finding that Briggs, Blitman and Posner, acting in accordance with the percentage fee agreement, prepared and submitted a known erroneous final estimate whereby the contractor was overpaid. In this certification and other certifications Briggs, Blitman and Posner certified that the contractor should be paid for having excavated ‘1 muck ’ ’ and having replaced it with suitable materials in areas where that activity supposedly took place. Following the completion of the contract, many areas were found to be in their original state, with no excavation having been performed at all. In some areas expert testimony was required to establish this fact, but as to others there were found to be large trees, considerably older than the highway, old abandoned macadam roads and remains of an old dump. Clearly these areas were not excavated, but Briggs, Blitman and Posner not only had informed the State that this had been done, but they had received payment therefor.
In the course of the contract, Briggs, Blitman and Posner were paid a quarter of a million dollars. This included payment under two supplemental agreements under which the amount of excavation was increased first by 184,386 cubic yards, and again *340 by 46,664 cubic yards. Under an additional supplemental agreement under which the amount of excavation was increased by 298,293 cubic yards, the engineer has not been paid, but the contractor was paid. All the payments were made under periodic estimates prepared by Briggs, Blitman and Posner. The final alleged exact calculation of the amounts due to the parties was prepared by Briggs, Blitman and Posner and signed by Harry Posner under oath. This, of course, was grossly wrong, as it was not based upon actual measurements and inspections of excavations, but upon nonexistent notes of measurements. In fact, it was based upon measurements supplied to Briggs, Blitman and Posner by the Yonkers Contracting Co. through the efforts of Snook. In his affidavit Posner told the State that the contractor was entitled to $2,210,053.30 for excavation and fill, a sum which amounted to one third of the value of the entire contract and totalled more than the worth of all the reinforced concrete, structural steel and reinforcing bars on this portion of the Thruway. It is self-evident that when Posner submitted, over his sworn statement, a document he knew to be false which caused the State to pay out over $100,000 for excavation and fill which had not been performed, such representations were knowingly false and fraudulent within the meaning of the larceny statute. Furthermore, each of the named defendants, with larcenous knowledge and intent, participated in preparing and submitting to the State these false and fraudulent claims. They argue, however, that the indictments against both Snook and Posner only charge them specifically with “ the theft of $5,698.62 ”. This is not so; both indictments charge the defendants with unlawfully depriving the State of a sum in excess of that amount. There is no question on this record but that the amount paid for the excavation work was in excess of the amount lawfully due and owing to the engineers under the contract. Moreover, a showing of personal profit is not necessary to sustain a charge of larceny. All that is necessary is to show that the person entitled to the subject of the larceny was deprived thereof, not that the person responsible for the larceny was enriched thereby. The parts played by Posner and Snook in the preparation of the Briggs documents, which were presented to the State in support of Yonkers’ *341 claims for payment and which on their face do not support the claims for such payment, fall within the definition of larceny (Penal Law, § 1290). The defendants are, if this evidence is believed by a trial jury, persons who with intent to deprive the State of property by means of estimates and certificates known to them to be false and fraudulent caused the appropriation of property to the use of Briggs, Blitman and Posner and the Yonkers Contracting Co.
There was no violation of section 250 of the Code of Criminal Procedure in regard to the right of Posner to testify before the Grand Jury. He appeared before the Grand Jury twice, and his testimony was uninterrupted until completed. Upon his suggestion, he was then questioned extensively. When finished he did not even intimate that he had not had an opportunity to testify fully. Indeed, the Attorney-General later called his attorney to inquire if Posner was interested in giving any further evidence to the Grand Jury. Posner appeared and, after a discussion with members of the staff of the Attorney-General, stated that he would prefer not to make an appearance before the Grand Jury at that time. His attorney was then aware that the Grand Jury would terminate its investigation on that day. The suggestion that he was led to believe that he might have an opportunity to testify before the Grand Jury several months later is rebutted by his oaaoi attorney’s affidavit that no testimony would-be taken after that day. In this case the effort to discover possible further testimony was initiated by the Attorney-General, a fact which itself takes the case out of the provisions of section 250 of the Code of Criminal Procedure. Here the defendant had completed his testimony, after he had given his uninterrupted version of the matter on two occasions before the Grand Jury. He himself concluded at that point that he did not wish to testify further and left the premises immediately and returned to his residence. He did not object either then or thereafter through his attorney or otherwise that any right Avas being violated.
Accordingly, the order of the Appellate Division reinstating the indictments against Spencer A. Snook and Harry Posner for larceny should be affirmed.
*342 Judges Fuld, Soileppi, Bbbgan and Keating concur with Judge Van Voorhis; Judge Burke dissents in part in an opinion in which Chief Judge Desmond concurs.
Order modified by dismissing the indictments against defendants Cipolla, Posner and Snook and, as so modified, affirmed.